IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Eva Anderson, <br><br> *Plaintiff,* <br><br> v. <br><br> Kenneth L. Baritz, Esq., Baritz Law Associates, LLC, PMC Property Group, Inc., <br><br> *Defendants.* | CIVIL ACTION <br><br> NO. 24-2095 |

**Pappert, J.**                                                                                       **January 27, 2025**

<u>**MEMORANDUM**</u>

     Eva Anderson asserts various claims under the Fair Debt Collection Practices Act against PMC Property Group Inc., Baritz Law Associates LLC and Kenneth L. Baritz, Esquire for their conduct in seeking to recover rent that Anderson withheld from her landlord. All Defendants moved to dismiss all claims on the ground that they are barred by issue preclusion in light of a state-court ruling in favor of the landlord and against Anderson. PMC alternatively seeks dismissal of all claims, arguing that it is not a "debt collector" under the FDCPA. The Baritz Defendants seek dismissal of one claim against them on the alternative ground that Anderson has not alleged conduct that violates 15 U.S.C. § 1692e(8). All Defendants also sought a stay in the event the Court does not dismiss the case in full.

     The Court grants PMC's motion but denies the Baritz Defendants' motion. All claims against PMC are dismissed without prejudice, and the Court will not stay the case.

1

I

Plaintiff Eva Anderson is a tenant of an apartment complex located at 30 North 23rd Street in Philadelphia. (Am. Compl. ¶ 18, ECF No. 20.) The property is owned by 30 North 23rd Street Associates LLC (the landlord). (*Id.* ¶ 24); (Municipal Ct. Compl., ECF No. 25-1 at 2.) PMC Property Group manages the complex; it is listed as the "Managing Agent" on the rental license and apparently "performs all of the landlord's obligations under the [lease]." (Am. Compl. ¶ 25); (Rental License for 30 North 23rd Street, ECF No. 25-1 at 88); (Anderson Ct. of Common Pleas Answer and Countercl. Compl. ¶ 19, ECF No. 25-6.) Baritz Law Associates LLC represents the landlord in connection with the 30 North 23rd Street complex. (Am. Compl. ¶ 35.) Kenneth L. Baritz is the lawyer at Baritz Law who sought to collect unpaid rent from Anderson and who appeared on behalf of the landlord in the state-court proceedings. (Am. Compl. ¶¶ 19, 39, 58–59); (Municipal Ct. Compl., ECF No. 25-1 at 3); (Ct. of Common Pleas Compl., ECF No. 25-5 at 3.)

In May 2023, Anderson began withholding some of her rent from the landlord due to alleged habitability issues. (Am. Compl. ¶ 33, Ex. 3); (Tr. Municipal Ct. Proceedings 6:6–10, ECF No. 25-2.) Both PMC and Mr. Baritz sought to recover the withheld rent for several months. (Am. Compl. ¶¶ 34–36, 50, 53, Ex. 4–6.)[1] On the landlord's behalf, Mr. Baritz sued in Philadelphia Municipal Court in February 2024 seeking to recover the withheld rent and regain possession of the apartment. (Am. Compl. ¶¶ 64–65, Ex. 8.)

---

[1] Baritz alleges that a guarantor paid back some of the rent that Anderson withheld but not all of it. (Am. Compl. ¶¶ 45–48.)

In the Municipal Court action, Anderson raised several grounds she believed justified her withholding of rent. She argued the landlord violated the implied warranty of habitability when it failed to maintain elevators in working condition; did not possess necessary rental licensing; failed to provide her with a Certificate of Rental Suitability, which a landlord must do before collecting rent per § 9-3903 of the Philadelphia Code; and could not legally obtain a Certificate of Rental Suitability because it had "outstanding violations." (Tr. Municipal Ct. Proceedings 9:2–5, 9:24–10:3, 10:1–10:3, 22:17–24, 23:15–21.) Rejecting most of Anderson's arguments, the Municipal Court ruled on May 16, 2024 that Anderson owed the landlord $17,266.00 and that the landlord was entitled to possession of the apartment. (*Id.* at 25:9–16.) The basis for the amount awarded was seven months of unpaid rent at a rate of $2,410.00 per month, plus $450.00 in legal fees, minus $54.00 in rent abatement for the hours that the landlord failed to maintain functioning elevators. (*Id.* at 6:3–10; 25:9–16.)

Anderson appealed the Municipal Court's ruling, (Notice of Appeal, ECF No. 25-4), which under Philadelphia County Local Court Rule 1001(a)(1) entitles her to a trial *de novo* in the Philadelphia Court of Common Pleas. In the Common Pleas Court, Anderson raised all the same arguments as in the Municipal Court action. (Anderson Ct. of Common Pleas Answer and Countercl. Compl. ¶¶ 21, 31–33); (Tr. Ct. of Common Pleas Proceedings 9:25–10:2, 11:6–8, 11:15–17, 61:5–7, 80:5–11, ECF No. 30, Ex. 14.) She also raised several new complaints about the apartment. (Anderson Ct. of Common Pleas Answer and Countercl. Compl. ¶¶ 25–27, 35–36, 44, 46–50, 56.) And she argued for the first time that because the landlord only provided a Certificate of Rental

3

Suitability during the original lease term (February 2022 through March 2023) and not again when she renewed the lease, the landlord failed to comply with its obligations under § 9-3903 of the Philadelphia Code. (Tr. Ct. of Common Pleas Proceedings 127:10–20.)

On October 1, 2024, the Common Pleas Court ruled after a trial that the landlord was entitled to recover the withheld rent and take possession of the property. (*Id.* at 135:15–136:12.) The total monetary award was $33,656.57, which included unpaid rent from November 2023 onward, plus late fees and legal expenses, minus some rent abatement. (Ct. of Common Pleas J., Oct. 21, 2024, ECF No. 25-7); (Ct. of Common Pleas Amended J., October 22, 2024, ECF No. 25-8.)[2] Anderson then filed post-trial motions, including one seeking entry of judgment in her favor or alternatively a new trial. (Br. in Support of Post-Trial Relief, ECF No. 30, Ex. 17.) The Common Pleas Court has not yet ruled on that motion. *See* (Ct. of Common Pleas Civ. Docket No. 240502687.)

As the state-court case advanced, Anderson also filed her first Complaint in this Court on May 15, 2024—the day before the Municipal Court trial—alleging that PMC, Baritz and Baritz Law violated the FDCPA in the course of seeking to recover the withheld rent. *See* (Compl., ECF No. 1.) She amended her Complaint on October 31, 2024 to include conduct by Mr. Baritz and PMC during the Municipal Court trial and

---

[2]   The judgment from the Court of Common Pleas does not specify the exact breakdown of the amounts making up the monetary award, but the landlord's complaint makes clear it was seeking rent, late fees and legal expenses, and the judgment states it afforded Anderson some rent abatement. (Ct. of Common Pleas Compl. ¶¶ 9-13, ECF No. 25-5); (Ct. of Common Pleas J., Oct. 21, 2024.)

4

the Common Pleas Court proceedings. *See* (Am. Compl., ECF No. 20.)  Her Amended Complaint alleges violations of five FDCPA provisions.

First, Anderson claims the Defendants misrepresented the character, amount and legal status of the debt she owed to the landlord, in violation of 15 U.S.C. § 1692e(2)(A). (*Id.* Count I.)  The Amended Complaint fairly alleges two separate violations of the provision.  First, that the debt was entirely uncollectable—for the same reasons she argued in state court—and the Defendants therefore misrepresented that the debt was collectable during their collection efforts. (Am. Compl. ¶¶ 90–92.)  The Amended Complaint also alleges the Defendants overrepresented the amount of debt Anderson owed when, during their collection efforts, they failed to account for the abatement to which the Court of Common Pleas determined Anderson was entitled. (*Id.* ¶ 91); *see also* (Ct. of Common Pleas J., Oct. 21, 2024 (awarding abatement)).

Second, Anderson alleges that the Defendants sought to collect debt not expressly created by agreement or permitted by law, in violation of 15 U.S.C. § 1692f(1). (Am. Compl. Counts II & VI.)  The Amended Complaint alleges two violations of this provision: first, that the Defendants attempted to collect an entirely uncollectable debt, (*id.* ¶¶ 93, 108–112), and second, that the Defendants sought to collect more than Anderson owed because they failed to account for the rent abatement, *see* (*id.*); (Ct. of Common Pleas J., Oct. 21, 2024.)

Third, Anderson alleges that when the Defendants reported the alleged debt to third parties, they failed to note its disputed status, which violates 15 U.S.C. § 1692e(8). (*Id.* Count III.)  Specifically, PMC allegedly reported the debt to Mr. Baritz

5

without noting its disputed status, and Baritz allegedly reported the debt to the Municipal Court and Court of Common Pleas without doing the same. (*Id.* ¶¶ 97–101.)

Fourth, Anderson contends the Defendants used various "unfair and unconscionable means" to collect the alleged debt, in violation of 15 U.S.C. § 1692f. (*Id.* Counts IV and VII.) These include attaching irrelevant documents to their state-court pleadings, "intentionally create[ing] chaos and manipulat[ing] documents" in their Court of Common Pleas complaint, and misrepresenting facts in their Court of Common Pleas complaint. (*Id.* ¶¶ 102-107, 114–117, 121–125.)

Fifth, she alleges that the Baritz Defendants initiated eviction proceedings and created eviction records, which she says violates 15 U.S.C. § 1692f because the natural consequence of those actions is to damage Anderson's reputation. (*Id.* ¶¶ 126–129.)

II

To avoid dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain facts sufficient to state a claim that is facially "plausible." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the factual allegations permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct. *Id.* The "mere possibility of misconduct" is not enough; the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 570).

Determining plausibility is a "context-specific task" requiring a court to use its "judicial experience and common sense." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016). In making this determination, the court assumes well-pleaded

facts are true, construes those facts in the light most favorable to the plaintiff, and draws reasonable inferences from them. *Id.* at 790. The plaintiff need only allege enough facts to "raise a reasonable expectation that discovery will reveal evidence" of each element of her claim. *Connelly*, 809 F.3d, at 788–89. But "[c]onclusory assertions of fact and legal conclusions" are not entitled to the presumption of truth. *Schuchardt v. President of the United States*, 839 F.3d 336, 347 (3d Cir. 2016). So "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678, (quoting *Twombly*, 550 U.S. at 555).

In addition to the allegations in the complaint itself, the Court can review documents attached to the complaint and matters of public record, which include judicial proceedings and opinions. *McTernan v. City of York, Penn.*, 577 F.3d 521, 526 (3d Cir. 2009); *Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 257 n.5 (3d Cir. 2006). The Court may grant a 12(b)(6) motion based on an affirmative defense only if the basis for the defense is "apparent on the face of the complaint" or the other materials properly considered. *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272, 280 (3d Cir. 2016); *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Importantly, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The Court should construe the complaint liberally and "apply the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name." *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003).

7

III

The Defendants' primary argument is that Anderson's claims are barred under the doctrine of issue preclusion, given that the Court of Common Pleas already adjudicated the landlord-tenant dispute.[3] (Baritz Mot. to Dismiss 14–17); (PMC Mot. to Dismiss 8–12.) Federal courts must give full faith and credit to state-court proceedings, 28 U.S.C. § 1738, which means federal courts must "give the same preclusive effect to state court judgments that those judgments would be given in the courts of the State from which the judgments emerged," *Adelphia Gateway, LLC v. Pennsylvania Env't Hearing Bd.*, 62 F.4th 819, 825 (3d Cir. 2023) (quoting *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 466 (1982). In Pennsylvania, a party raising the defense of issue preclusion must establish five elements: (1) the issue decided in the prior case is identical to the one presented in the later action; (2) there was a final adjudication on

---

[3] The Defendants also invoke *res judicata* and the *Rooker-Feldman* doctrine, but neither merits much discussion. The doctrine of *res judicata* (also called "claim preclusion") provides that "a final valid judgment upon the merits by a court of competent jurisdiction bars any future suit between the parties or their privies, on the same cause of action." *Allegheny Int'l v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1429 (3d Cir. 1994) (quoting *Keystone Bldg. Corp. v. Lincoln Sav. & Loan Ass'n*, 360 A.2d 191, 194 (Pa. 1976)). Anderson did not raise, and the parties did not litigate, the merits of her FDCPA causes of action in state court. *See generally* (Baritz Mot. to Dismiss, Ex. 2); (Pl.'s Br. in Opp., Ex. 14.) And Anderson was not obligated to raise her FDCPA claims as counterclaims in the state action, Pa. R. Civ. P. 1148, so her failure to do so does not preclude her from raising them in a different action, *Hunsicker v. Brearman*, 586 A.2d 1387, 1390 (Pa. Super. Ct. 1991); *see also Ramos v. LVNV Funding, LLC*, No. CV 18-5496, 2019 WL 1994463, at *2 (E.D. Pa. May 3, 2019) ("[b]ecause Pennsylvania law did not require Ramos to bring her FDCPA and FCEUA claims as counterclaims in the Collection Lawsuit, the earlier suit does not bar her from asserting those claims here").

The *Rooker-Feldman* doctrine applies only in narrow circumstances: it bars "state-court losers [from] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Anderson has not "invited review and rejection" of any state-court judgment; she has merely alleged claims with a similar factual basis to a state-court action. To the extent any of her claims are inconsistent with the state court's rulings, analysis of those claims will "be governed by preclusion law." *Exxon Mobil Corp.*, 544 U.S. at 293.

the merits in the prior case; (3) the party against whom the defense is asserted was a party or in privity with a party in the prior case; (4) the party against whom the defense is asserted (or their privy) had a full and fair opportunity to litigate the issue in the prior case; and (5) the determination in the prior proceeding was essential to the judgment. *Id.* at 825, 827; *Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50–51 (Pa. 2005).

The Court of Common Pleas' judgment is not yet final. A judgment is final for the purpose of issue preclusion when it is "sufficiently firm to be accorded conclusive effect." *Shaffer v. Smith*, 673 A.2d 872, 875 (Pa. 1996) (quoting Restatement (Second) of Judgments § 13 (1980)). To determine whether a ruling is "sufficiently firm," courts consider four factors: (1) whether the decision was "adequately deliberated" and not "avowedly tentative," (2) "whether the parties were fully heard," (3) whether the court issued a "reasoned decision," and (4) whether the decision was subject to appeal. *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 358 (3d Cir. 1999) (citing Restatement (Second) of Judgments § 13 (1980)). No one factor is determinative, and courts weigh them with an eye toward determining whether there is any "good reason for permitting [the relevant] issue to be litigated again." *Free Speech Coal., Inc. v. Att'y Gen. of U.S.*, 677 F.3d 519, 541 (3d Cir. 2012).

Considering the relevant factors, the Court of Common Pleas' judgment is not "sufficiently firm" to be final.[4] The Common Pleas Court stated reasoning on the record at the conclusion of trial and gave no indication that the decision was tentative. *See*

---

[4]    The Municipal Court's judgment is not relevant to the finality analysis because the trial *de novo* in the Common Pleas Court renders the Municipal Court judgment nonfinal. Restatement (Second) of Judgments § 13 cmt. f, *cited with approval in Yonkers v. Donora Borough*, 702 A.2d 618, 621 (Pa. Commw. Ct. 1997).

(Tr. 131:3–133-4; 135:15–136:12.)  But Anderson's post-trial motion, until resolved, renders that judgment unappealable.  Pa. R. Civ. P. 227.1(a), 227.4; *see City of Philadelphia v. Galdo*, No. 532 C.D. 2020, 2021 WL 5872947, at *7 (Pa. Commw. Ct. 2021) ("an appealable order is one from which judgment has been entered, and … Pa. R. Civ. P. 227.4 prevents judgment from being entered prior to the resolution of outstanding post-trial motions.").  Her motion also creates the distinct possibility that the Common Pleas Court will undertake further deliberation and alter its prior judgment.  *See* Pa. R. Civ. P. 227.1(a).  And the flexible approach to determining a ruling's finality for issue-preclusion purposes is meant to give preclusive effect to "procedurally definite" decisions that will not technically become final for claim-preclusion or appeals purposes until the conclusion of the whole case.  *See* Restatement (Second) of Judgments § 13, cmt. g.)  Those are not the circumstances here, as Anderson has specifically asked the Court of Common Pleas to revisit the potentially preclusive decision.  In other words, there is "good reason" for allowing the issues embraced by the Court of Common Pleas' judgment to continue to be litigated, as those issues currently continue to be litigated in that court.[5]

Even if the Common Pleas Court's judgment were final, Defendants' issue-preclusion defense would fail for most of Anderson's claims because only a small subset of her claims depend on an issue identical to one the Court of Common Pleas decided. Again, the Common Pleas Court ruled that the landlord was entitled to recover the withheld rent, minus a small amount of abatement, plus late fees and legal fees.  (Ct. of

---

[5]   This conclusion is consistent with the conclusions of other courts who have considered the issue.  *See In re Gay*, No. AP 23-02041-JAD, 2024 WL 2947614, at *10 (Bankr. W.D. Pa. June 11, 2024) (describing cases).

Common Pleas J., Oct. 21, 2024); (Ct. of Common Pleas Amended J., October 22, 2024). But the issue of the landlord's entitlement to the withheld rent is irrelevant to most of Anderson's FDCPA claims.

Anderson's first claim is that Defendants violated 15 U.S.C. § 1692(e)(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt." Specifically, she alleges that they violated subsection e(2)(A) by "attempting to collect unauthorized debt in the Municipal Court … [and] in the Court of Common Pleas." (Compl. ¶ 91.) As noted, this fairly includes two separate claims. First, that Baritz and PMC misrepresented the legal status of the debt because, for the same reasons Anderson raised in state court, the landlord was actually not entitled to recover any withheld rent. That claim would be barred by issue preclusion because the Court of Common Pleas ruled that the landlord was entitled to recover (most of) the withheld rent. (Ct. of Common Pleas Judgment, Oct. 21, 2024). But the second claim is that Baritz and PMC misrepresented the amount that Anderson owed, in light of the Court of Common Pleas' grant to Anderson of some rent abatement. *See* (*id.*) That claim is not barred by issue preclusion because it does not depend on proving the wholesale invalidity of the debt.

Anderson next alleges that the Defendants violated 15 U.S.C. § 1692f(1), which prohibits "[t]he collection of any amount … unless such amount is expressly authorized by the agreement creating the debt or permitted by law." As used in that subsection, the term "collection" "includes attempted collection as well as actual collection." *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 367 n.4 (3d Cir. 2011). Just as with her e(2)(A) claims, Anderson's Complaint fairly alleges two f(1) claims: one premised on

11

the wholesale invalidity of the debt and one based on Defendants having overstated the amount owed.  (Am. Compl. ¶¶ 93, 108–113.)  And just as with e(2)(A) claims, issue preclusion would bar the first but not the second.

Anderson next contends that the Defendants violated 15 U.S.C. § 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."  Her claim under subsection e(8) thus depends on whether she disputed the debt, whether Defendants knew of that dispute, and whether they communicated credit information to a person without noting that the debt was disputed.  *See Jacques v. Solomon & Solomon P.C.*, 886 F. Supp. 2d 429, 434 (D. Del. 2012).  Her claim does not depend on the validity of the underlying debt and would thus not be barred by issue preclusion.

Anderson then claims that the Defendants violated 15 U.S.C. § 1692f, which is a catchall provision prohibiting debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt."  *See Hoover v. Monarch Recovery Mgmt., Inc.*, 888 F. Supp. 2d 589, 601 (E.D. Pa. 2012).  The provision's language aims at the "means" by which a debt collector seeks to collect, not on the validity of the underlying debt.  Plus, each of Anderson's 1692f allegations concern the Defendants' debt-collection means and not validity of the debt.  (Am. Compl. ¶¶ 102–06, 114–125.)  Accordingly, the Court of Common Pleas' judgment would not be preclusive of Anderson's § 1692f claims.

Anderson's final claim alleges that Mr. Baritz and/or his firm violated 15 U.S.C. § 1692d, which prohibits debt collectors from "engag[ing] in any conduct the natural

12

consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." Much like § 1692f, § 1692d focuses on a debt collector's conduct during debt collection, and not on the validity or amount of the debt sought. Accordingly, Anderson's § 1692d claim would not be barred by issue preclusion.

V

PMC also seeks dismissal of all claims against it on the grounds that Anderson has not plausibly alleged it is a "debt collector," (PMC Mot. to Dismiss 12), a necessary element of FDCPA claims, *Lutz*, 49 F.4th 323 at 328. Generally, a "debt collector" for FDCPA purposes is "any person" who either (1) engages "in any business the principal purpose of which is the collection of any debts," or (2) "regularly collects" debts owed to another. 15 U.S.C. § 1692a(6). The definition excludes from the Act's reach, however, any debt-collection activities that are "incidental to a *bona fide* fiduciary obligation." *Id.* § 1692a(6)(F)(i). Federal courts have consistently held at both the summary-judgment and motion-to-dismiss stages that property managers like PMC fall within that exception. *See Harris v. Liberty Cmty. Mgmt., Inc.*, 702 F.3d 1298, 1302 (11th Cir. 2012); *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 481 (6th Cir. 2020); *Raburn v. Cmty. Mgmt., LLC*, 761 F. App'x 263, 266–67 (5th Cir. 2019); *Berndt v. Fairfield Resorts, Inc.*, 339 F.Supp.2d 1064, 1068 (W.D. Wis. 2004); *Reynolds v. Gables Residential Services, Inc.*, 428 F.Supp.2d 1260, 1264 (M.D. Fla. 2006); *Yergovich v. Small Cmty. Specialists LLC*, 337 F. Supp. 3d 635, 643–46 (E.D. Va. 2018); *Taylor v. Precision Prop. Mgmt.*, No. 1:14-CV-75, 2015 WL 1756981, at \*10 (W.D. Mich. Apr. 17, 2015); *Johnson v. Young*, No. 2:06-cv-818, 2007 WL 2177956, at \*3 (S.D. Ohio July 27, 2007).

These cases reflect a common-sense understanding of the relationship between a property owner and property manager. First, property managers are generally agents of, and thereby owe fiduciary duties to, the property owners for whom they work. *See Reynolds*, 427 F.Supp.2d at 1264 (observing that "the general relationship between a community manager and property owner" is a fiduciary one). Indeed, under Pennsylvania law, a "Managing Agent" like PMC must undertake certain duties on behalf of the property owner for whom it works, Phila. Code § 9-3907(3), and any party who agrees to act on behalf and subject to the control of another is an agent of that principal and thereby owes fiduciary duties to that principal, *Basile v. H & R Block, Inc.*, 761 A.2d 1115, 1120 (Pa. 2000).

Second, debt collection is generally "incidental" to a property manager's fiduciary relationship with a property owner. "Incidental" means "occurring as something casual or of secondary importance." *Harris*, 702 F.3d at 1302 (quoting 1 Shorter Oxford English Dictionary 1343 (5th ed. 2002)); *see also Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1034 (9th Cir. 2009). Property managers generally perform numerous functions, and debt collection is not primary among them. *See Harris*, 702 F.3d at 1302 (listing nine different functions performed by the defendant-property manager); *Raburn*, 761 Fed. App'x at 267 ("debt collection was one of [defendant's] sixteen obligations"); *Bates*, 958 F.3d at 481 ("a complaint does not plausibly allege that an entity has a primary debt-collection purpose … merely by alleging that it manages a condo complex").

Anderson's Amended Complaint alleges no facts about PMC's relationship with the landlord, much less any facts suggesting that PMC's relationship with the landlord

14

is any different from a typical landlord-property-manager relationship. On the contrary, her Common Pleas Court pleading alleges PMC "performs all of the landlord's obligations under the [lease]." (Anderson Ct. of Common Pleas Answer and Countercl. Compl. ¶ 19.) Thus, applying "judicial experience and common sense," *Connelly*, 809 F.3d at 786–87, it would not be reasonable to infer that PMC's alleged debt-collection activities were anything other than incidental to its *bona fide* fiduciary obligation to the landlord.[6]

## VI

The Baritz Defendants also seek dismissal of Count III—which alleges violations of 15 U.S.C. § 1692e(8)—on the ground that Anderson has not plausibly alleged any conduct that violates that provision. Section 1692e(8) prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). Anderson specifically invokes subsection e(8)'s final clause, so she must allege facts that could show (1) she disputed the debt, (2) the Baritz Defendants knew she disputed the debt, and (3) the Baritz Defendants communicated

---

[6] In her Response, Anderson erroneously invokes a clause that brings within the FDCPA's scope entities who otherwise fall within certain exemptions. That clause provides that "[n]otwithstanding the exclusion provided by clause (F) … , the term [debt collector] includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6). For one, nothing in Anderson's Amended Complaint (nor any of the other documents the Court may consider) suggests that PMC was seeking to collect debt on its own behalf rather than on behalf of the landlord, and the Court need not "accept assertions in a brief without support in the pleadings." *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015). More importantly, her specific argument is that PMC "operate[s] through multiple single-asset entities" that are "functionally indistinguishable from PMC," (Anderson Resp. in Opp. 27), which suggests that PMC is "related by common ownership" to the landlord and thereby falls under *another* exemption from the FDCPA, *see* 15 U.S.C. § 1692a(6)(B).

information about the debt to someone but failed to note that the debt was disputed. *Id.*; *see also Jacques*, 886 F. Supp. 2d at 434.  The Baritz defendants do not appear to contest any of those three elements.  *See* (Baritz Mot. to Dismiss 18–20.)  They argue instead that Pennsylvania's judicial privilege insulates them from liability for their in-court statements, and alternatively that they can't be held liable for their failure to tell the state courts of the debt's disputed status because the dispute over the debt "was the very basis of the underlying action and was addressed at length during the Municipal Court Hearing and in the Common Pleas Action." (*Id.* at 20.)  Neither argument has merit.

First, common-law privileges for statements made in judicial proceedings do not exempt parties from FDCPA liability.  *Allen ex rel. Martin v. LaSalle Bank, N.A.*, 629 F.3d 364, 369 (3d Cir. 2011); *see also Kaymark v. Bank of Am., N.A.*, 783 F.3d 168, 178 (3d Cir. 2015) (explaining that Congress's choice to exclude formal pleadings from some FDCPA provisions and not others "suggest[s] that all litigation activities, including formal pleadings, are subject to the FDCPA"), *abrogated on other grounds by Obduskey v. McCarthy & Holthus LLP*, 586 U.S. 466, 477 (2019).  Second, nothing in § 1692e(8) excuses a failure to communicate a debt's disputed status on the basis that the recipient of the communication later learned of the dispute.  *Cf. Kaymark* 783 F.3d at 178 n.3 (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1032 n.1 (9th Cir. 2010)) ("Sections 1692e and 1692f do not suggest that otherwise unlawful representations are permitted so long as they are followed up, at some later time, with a communication correcting the statements that gave rise to the communications unlawful nature.").

16

VII

The Defendants have also asked, in the alternative, for a stay pending the resolution of the Court of Common Pleas action. (Baritz Mot. to Dismiss 20); (PMC Reply in Supp. 3, ECF No. 32.) Specifically, they urge that this case's outcome "is entirely contingent upon the outcome of the Common Pleas [a]ction." (Baritz Mot. to Dismiss 20.) Federal courts have a "virtually unflagging obligation … to exercise the jurisdiction given to them," *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976), and may only decline that jurisdiction in "extremely limited" circumstances, *Ryan v. Johnson*, 115 F.3d 193, 195 (3d Cir. 1997). The Defendants' assertion that the Court ought to decline its jurisdiction in deference a state-court action implicates so-called *Colorado River* abstention. That doctrine permits courts to stay or dismiss a case in deference to a state-court action when (1) the state and federal actions are "parallel," and (2) "extraordinary circumstances" merit abstention. *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 307–08. (3d Cir. 2009).

This case and the Common Pleas action are not "parallel." Again, nearly all of Anderson's FDCPA claims operate independently of the issues litigated in the Court of Common Pleas. Thus, this case does not raise "substantially identical claims [and] nearly identical allegations and issues." *Yang v. Tsui*, 416 F.3d 199, 204 n. 5 (3d Cir. 2005). And the kinds of circumstances that are properly deemed "extraordinary" include the combination of a "clear federal policy" of avoiding piecemeal litigation over an issue, the primacy of state law in resolving the issues presented, the geographical inconvenience of the federal forum, and the significant progress in the state-court

action as compared to the federal one.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983) (citing *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 819–820 (1976)).  Outside of the fact that the Common Pleas case has progressed further than this one, no similar circumstances are present here.  Plus, federal law provides the rule of decision for Anderson's FDCPA claims, which is a major consideration weighing against surrender.  *Id.* at 26.

## VIII

A court should grant a plaintiff leave to amend a complaint "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile."  Anderson may amend her claims against PMC to allege facts that could show it is a "debt collector."  She may do so on or before February 26, 2024.

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.