IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| EVA ANDERSON,<br><br>    *Plaintiff,*<br><br> v.<br><br>KENNETH L. BARITZ, et al.,<br><br>    *Defendants.* | CIVIL ACTION<br>NO. 24-2095 |

**Pappert, J.**                               **December 10, 2025**

**MEMORANDUM**

  *Pro se* plaintiff Eva Anderson sued Kenneth L. Baritz, Esquire and his law firm Baritz Law Associates LLC, asserting various claims under the Fair Debt Collection Practices Act. She filed two separate motions, seeking the Court's disqualification. The Court denies them both because they are based on disagreement with the Court's ruling that Anderson be deposed in person, not remotely as she prefers.

I

  Anderson sued Kenneth Baritz and Baritz Law Associates over their efforts to collect rent Anderson withheld from her landlord. In November of 2024, Baritz and his firm moved to dismiss Anderson's claims, but the Court denied their motion. *Anderson v. Baritz*, No. 24-2095, 2025 WL 309047, at *1–9 (E.D. Pa. Jan. 27, 2025). In October of 2025, the Baritz defendants served Anderson with a notice to take her deposition on November 6. (Letter from Monica Littman to the Court at 1, Dkt. No. 69.) Anderson replied that she was not available for a deposition until after November 14. (Letter from Eva Anderson to Monica Littman at 3, Dkt. No. 69-1.) She also said she would not answer, among other things, (1) "irrelevant" questions, (2) questions "designed to

1

harass, embarrass, or intimidate," (3) questions about the underlying landlord-tenant litigation or (4) questions about her medical and treatment history. (*Id.* at 2.) Concerned that Anderson was attempting to improperly "place limits" on and "pre-determine" the scope of her deposition, counsel for the Baritz defendants sent a letter to the Court. (Letter from Monica Littman to the Court at 1.) She explained, among other things, that the underlying landlord-tenant litigation was central to Anderson's FDCPA claims and that Anderson's medical and treatment history were relevant to her emotional-distress claims. (*Id.* at 2.)

On October 29, the Court held an on-the-record telephone conference with the parties. The Court told Anderson she needed to sit for a deposition and answer questions relevant to the case. *See* (Tr. of Telephone Conference at 1–25, Dkt. No. 89). Anderson asserted for the first time she could not sit for an *in-person* deposition because she has a heart condition. But, as the Court noted, there was no evidence or documentation to support such a claim. So, after the conference concluded, the Court ordered Anderson to (1) attend an in-person deposition on November 7 at the Baritz defendants' counsel's law office and (2) answer questions regarding, among other things, the underlying landlord-tenant litigation and her medical treatment and history. (Order at 1, Dkt. No. 73); (Tr. of Telephone Conference at 5–7.) Following this Order, Anderson filed two motions requesting to be deposed remotely, given her purported heart condition. (Mots. to Conduct Deposition by Remote Means, Dkt. Nos. 75 & 79.) Attached to one of these motions was a doctor's note stating that Anderson has atrial fibrillation. (Penn Medicine at 3, Dkt. No. 79-1.) The Court denied her motions, reasoning Anderson's note failed to explain how her atrial fibrillation, a

heart condition common to many Americans, prevented her from sitting for an in-person deposition. (Orders, Dkt. Nos. 77 & 80.)

Anderson then violated the Court's October 29 order by not showing up for her deposition. The Baritz defendants then moved for sanctions, and Anderson now seeks to disqualify the Court, pursuant to 28 U.S.C. § 455 and 28 U.S.C. § 144, before it can rule on the motion.

II

Section 455(a) requires a federal judge to disqualify himself when "a reasonable person, with knowledge of all the facts, would conclude that the judge's impartiality might reasonably be questioned." *In re Kensington Int'l Ltd.*, 353 F.3d 211, 220 (3d Cir. 2003). First, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky v. United States*, 510 U.S. 540, 555 (1994). To challenge a judicial ruling, a party should appeal the decision, not file a motion for recusal. *Id.* Second, alleged bias stemming from facts gleaned from the judicial proceeding, rather than from an extra-judicial source, is rarely grounds for recusal under § 455(a). *Securacomm Consulting, Inc. v. Securacom Inc.*, 224 F.3d 273, 278 (3d Cir. 2000). As the Supreme Court stated in *Liteky*: "[O]pinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Thus, "judicial remarks" during the course of a hearing "that are critical or disapproving of, or even hostile to," "counsel, the parties, or their cases ordinarily do not support a bias or partiality challenge." *Id.*

3

Section 144 permits a party to file "a timely and sufficient affidavit that the judge before whom [her] matter is pending has a personal bias or prejudice . . . against [her]." The Court must determine "whether, assuming the truth of the facts alleged, a reasonable person would conclude that a personal [bias]" exists. *Mims v. Shapp*, 541 F.2d 415, 417 (3d Cir. 1976). It "is the duty of the judge against whom a section 144 affidavit is filed to pass upon the legal sufficiency of the facts alleged." *United States v. Townsend*, 478 F.2d 1072, 1073 (3d Cir. 1973.)

### III

Anderson's motions reflect nothing more than disagreement with the Court's ruling that she must be deposed in person.[1] But again "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion." *Liteky*, 510 U.S. at 555. In addition, courts "may"—they do not have to—order "that a deposition be taken by . . . remote means." Fed. R. Civ. P. 30(b)(4). And here, Anderson failed to offer sufficient medical evidence or documentation which the Court could have considered in deciding whether to allow her to be deposed remotely. During the October 29 conference, Anderson asserted—for the first time—that she could not sit for an in-person deposition because she has a "very serious cardiac problem." (Tr. of Telephone Conference at 12:23–24.) Prior to the call, Anderson never told the Court or opposing counsel about her heart problem, nor did she submit any documentation to substantiate her claim. She told the Court her doctor said that her heart is not "strong [enough]" to take the stress of an in-person deposition. (*Id.* at 14:3–5.) The Court told Anderson she could

---

[1] As the Baritz defendants point out, Anderson has a habit of seeking the disqualification of judges when they rule against her. In the underlying landlord-tenant litigation, Anderson sought to disqualify the state court judge based on his rulings and comments during the trial. *See* (Baritz Defs.' Resp. in Opp'n to Mot. for Recusal and Mot. to Disqualify at 4, Dkt. No. 101).

file a motion for a remote deposition, but that she had to support it with "acceptable medical evidence." (*Id.* at 16:3–5.) In the days after the October 29 conference, Anderson filed two motions for a remote deposition, attaching to one of them a note from her doctor. She argued that stress from an in-person deposition could result in stroke or heart attack. (Pl.'s Emergency Mot. to Conduct Deposition by Remote Means at 2, Dkt. No. 79.) But the note did not say Anderson could have a stroke heart attack if she sat for an in-person deposition; it said Anderson has "atrial fibrillation." (Order at 1, Dkt. No. 80.) As the Court stated when denying the motions, the note failed to explain why atrial fibriliation, a common medical condition, prevented Anderson from sitting for an in-person deposition.[2] (*Id.*)

Anderson also takes offense with the Court's reaction to her revelation that she worked in New York City, despite living in Philadelphia. During the October 29 conference, Anderson told the Court she could not sit for a deposition on the specific date of November 6 because she had to travel from Philadelphia to New York City for work. (Tr. of Telephone Conference at 18–19.) Upon hearing this, the Court sought clarification: "Hold on—hold on. Back up. You work in *New York City*?" (*Id.* at 19:15–16) (emphasis added). The Court was surprised and confused as to how she could commute from Philadelphia to New York to work but could not be deposed in person in Philadelphia, doubting that answering questions about her allegations in this case was more taxing or stressful than her commute. (*Id.* at 21:1–5.)

---

[2] Anderson continues to misrepresent her doctor's purported opinion. During the Court's December 4 hearing on the defendants' motion for sanctions, Anderson characterized the note as saying "how dangerous" her "health was." (Tr. of Hearing at 52:25, 53:1, Dkt. No. 102.) Again, the note simply said Anderson has atrial fibrillation. It doesn't mention any danger the condition poses to Anderson or her ability to be questioned on her lawsuit.

Anderson next argues counsel for the Baritz defendants failed to attempt to resolve the dispute over the scope of her deposition with her before asking for Court intervention. True, the Court's policies say the "parties . . . shall make a reasonable effort to resolve discovery disputes before seeking Court intervention." (Policies and Procedures at 3, June 2025.) But as the Court explained, a failure to comply with the Court's own policies did not prevent the Court from ordering Anderson's deposition to be taken. *See* (Tr. of Telephone Conference at 9–10). And it would have been futile for the parties to attempt to resolve their dispute without Court intervention because Anderson had taken a hard position: She would not answer any questions she had firmly decided were off limits. *See* (*id.*).

Anderson also complains about the Court's "threat" to sanction her. During the October 29 conference, the Court told Anderson it would order her to attend an in-person deposition and "if you don't comply with the order, your opponent will move presumably for sanctions, for your violation of my order, and you will be subject to the sanctions listed in Rule 37, which can include up to the dismissal of the case." (*Id.* at 18:14–18.) Informing a *pro se* plaintiff of the consequences of a failure to comply with a court order does not reflect "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

Anderson also claims the Court discouraged her from obtaining counsel, but the Court did no such thing. During the October 29 conference, after Anderson said she might obtain counsel, the Court said, "[i]f [] you have a lawyer who can enter and represent you as soon as possible, that would be great." (Tr. of Telephone Conference at

6

18:8–10.) But, the Court said, that is "a whole different topic . . . unrelated to why you can't sit for a deposition." (*Id.* at 18:3–5.)

Finally, Anderson thinks the Court does not respect her because she is a female *pro se* plaintiff. To support this allegation, Anderson argues the Court referred to one of the defendants in its January 27 opinion as "Mr. Baritz" whereas it referred to her as "Anderson." To begin, Anderson's reliance on the Court's January 27 opinion is ironic given that the Court ruled in her favor. In any event, there are two defendants in this case: Baritz Law Associates LLC and Kenneth L. Baritz, Esquire. The Court described Kenneth Baritz as "Mr. Baritz" to distinguish him from his law firm. *See, e.g., id.* (using the language "Mr. Baritz and/or his firm"). The Court addressed Anderson by "Ms. Anderson" throughout the October 29 conference. *See, e.g.*, (Tr. of Telephone Conference at 11:6–8.)

An appropriate Order follows.

BY THE COURT:

*/s/ Gerald J. Pappert*
Gerald J. Pappert, J.

7