**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| EVA ANDERSON, | |
| *Plaintiff,* | CIVIL ACTION |
| v. | NO. 24-2095 |
| KENNETH L. BARITZ, et al., | |
| *Defendants.* | |

**Pappert, J.**                                              **December 23, 2025**

## MEMORANDUM

Eva Anderson sued Kenneth L. Baritz, Esquire and his law firm Baritz Law Associates LLC, asserting various claims under the Fair Debt Collection Practices Act. She recently violated a court order by refusing to attend her deposition. The defendants moved for sanctions under Federal Rule of Civil Procedure 37(b), and the Court grants the motion in part and requires Anderson to pay counsel $5,316.00.

### I

Anderson sued Kenneth Baritz and Baritz Law Associates over their efforts to collect rent Anderson withheld from her landlord. Though Anderson is proceeding *pro se*, she has a law degree from Poland and is licensed to practice law there, and she recently received a Master of Laws from Temple University Beasley School of Law. (Tr. of Oral Arg., Dec. 4, 2025 at 15–17, Dkt. No. 102.)

In November of 2024, Baritz and his firm moved to dismiss Anderson's claims, but the Court denied the motion. *Anderson v. Baritz*, No. 24-2095, 2025 WL 309047, at *1–9 (E.D. Pa. Jan. 27, 2025). In October of 2025, the Baritz defendants served Anderson with a notice to take her deposition on November 6. (Letter from Monica

1

Littman to the Court at 1, Dkt. No. 69.)  Anderson replied that she was not available to be deposed until after November 14.  (Letter from Eva Anderson to Monica Littman at 3, Dkt. No. 69-1.)  She also said she would not answer, among other things, (1) "irrelevant" questions, (2) questions "designed to harass, embarrass, or intimidate," (3) questions about the underlying landlord-tenant litigation or (4) questions about her medical and treatment history.  (*Id.* at 2.)  Concerned that Anderson was attempting to improperly "place limits" on and "pre-determine" the scope of her deposition, counsel for the Baritz defendants sought the Court's intervention.  (Letter from Monica Littman to the Court at 1.)

On October 29, the Court held an on-the-record telephone conference with the parties.  The Court told Anderson she needed to sit for a deposition and answer questions relevant to the case.  *See* (Tr. of Telephone Conference at 1–25, Dkt. No. 89).  Anderson asserted for the first time she could not sit for an *in-person* deposition because she has a heart condition.  But, as the Court noted, there was no evidence or documentation to support such a claim.  After the conference, the Court ordered Anderson to (1) attend an in-person deposition at ten o'clock in the morning on November 7 at the Baritz defendants' counsel's law office and (2) answer questions regarding, among other things, the underlying landlord-tenant litigation and her medical treatment and history.  (Order, Oct. 29, 2025 at 1, Dkt. No. 73); (Tr. of Telephone Conference at 5–7.)

Two days before the scheduled deposition, Anderson filed a motion for a remote deposition, given her purported heart condition.  (Mot. to Conduct Deposition by Remote Means at 1–5, Dkt. No. 75.)  The Court denied the motion, reasoning that

Anderson failed to offer any evidence to substantiate her claim. (Order, Nov. 6, 2025 at 1, Dkt. No. 77.) Then, at about three o'clock in the morning on November 7, Anderson filed another motion seeking to be deposed remotely, this time attaching a doctor's note stating that she has atrial fibrillation. (Emergency Mot. for Remote Deposition at 1–4, Dkt. No. 79); (Penn Medicine at 3, Dkt. No. 79-1.) The motion was docketed after ten in the morning, the start time for her deposition, but the Court quickly denied it, stating Anderson's note failed to explain how her atrial fibrillation, a heart condition common to many Americans, prevented her from sitting for an in-person deposition. (Order, Nov. 7, 2025 at 1–2, Dkt. No. 80.)

Anderson violated the Court's October 29 Order by not showing up for her November 7 deposition. After rejecting Anderson's further efforts to avoid being deposed in person, *see* (Order, Nov. 10, 2025 at 1, Dkt. No. 83); (Order, Dec. 2, 2025 at 1, Dkt. No. 95), the Court ordered Anderson's in-person deposition to take place in Courtroom 11-A on December 19, *see* (Order, Dec. 5, 2025 at 1, Dkt. No. 99). She was deposed, finally, that day.

The defendants in the meantime moved for sanctions under Federal Rule of Civil Procedure 37(b)(2)(C). They seek reasonable expenses, including attorney's fees, caused by Anderson's failure to appear for her November 7 deposition, or in the alternative, a dismissal of her case. At oral argument, the Court told the parties that dismissal was not an "appropriate sanction" under the circumstances, (Tr. of Oral Arg., Dec. 4, 2025 at 29), leaving only the defendants' request for monetary sanctions.

II

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes a court to sanction a party who "fails to obey an order to provide or permit discovery." Because Anderson refused to comply with an order requiring her to sit for a deposition, she "fail[ed] to obey an order to provide or permit discovery." In such a circumstance, the Court must order the "disobedient party . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust," Fed. R. Civ. P. 37(b)(2)(C), with the disobedient party bearing the burden of proof, *see* Fed. R. Civ. P. 37 advisory committee's note to 1970 amendments.

A

A party is substantially justified in failing to comply with a court order if there was a genuine dispute concerning compliance such that reasonable people could differ as to whether compliance was required. *Pierce v. Underwood*, 487 U.S. 552, 565 (1988); *Painadath v. Good Shepherd Penn Partners*, 348 F.R.D. 16, 34 (E.D. Pa. 2024). To satisfy this standard, the disobedient party typically must show her disobedience was (1) based on a good faith and reasonable misunderstanding of her obligations under the order, (2) only technical or at the periphery of the order causing the other party to suffer no prejudice or (3) attributable entirely to forces or circumstances beyond the party's control. *See* 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.51[9], LEXIS (database updated 2025).

Anderson's disobedience does not fit into any of those boxes. Reasonable people could not have misunderstood Anderson's obligations under the Court's October 29

4

Order.  It required her to attend an in-person deposition at ten o'clock in the morning on November 7 at the Baritz defendants' counsel's law office, and her disobedience was not technical.  And no external force or circumstance prevented Anderson from attending her deposition.

Anderson seeks to justify her violation of the Court's Order in two ways, neither of which is persuasive.

First, she argues her "emergency" motion for a remote deposition was pending before the Court on the day of her deposition.  Thus, she says, she "acted reasonably and in good faith by awaiting a ruling on a motion that directly affected her ability to safely participate in the deposition."  (Pl.'s Opp'n to Defs.' Mot. for Sanctions at 6, Dkt. No. 88.)  As an initial matter, Anderson's filing of a motion for a remote deposition under Rule 30(a)(4) did not stay her obligation to comply with the Court's October 29 Order requiring her attendance at an in-person deposition.[1]  More to the point, the Court had already denied Anderson's prior motion seeking a remote deposition. Anderson's November 7 nocturnal motion was a calculated maneuver designed to avoid being deposed in person, in direct contravention of the Court's Order.  She filed the motion at roughly three o'clock in the morning, seven hours before her deposition was to begin.  The Court first learned of it when it hit the docket shortly after ten o'clock, the start time of her deposition.  And after the Court denied Anderson's motion, she

---

[1]    Anderson argues that her failure to attend her November 7 deposition is excused under Rule 37(d)(2) because she had a pending motion for a protective order under Rule 26(c).  Even if her "emergency" motion for a remote deposition under Rule 30(a)(4) can be characterized as a motion for a protective order under Rule 26, Rule 37(d) applies to situations where a party fails to appear for a deposition after being served with proper notice.  The defendants here do not seek sanctions under Rule 37(d), however, so that rule is not applicable.  They instead seek sanctions under Rule 37(b), which deals with a party's failure to comply with a court order.

*never* contacted the defendants, nor did she make any effort to attend her deposition. To accept Anderson's argument would "invite continued argument on an issue already decided, and seriously undermine the authority of the Court." *Coca-Cola Bottling Co. of Shreveport, Inc. v. Coca-Cola Co.*, 110 F.R.D. 363, 373 (D. Del. 1986). In short, she was not "'substantially justified' in willfully defying a court order, notwithstanding [her] continued belief in the correctness of [her] position" that she could unilaterally dictate the manner in which she could be questioned by defense counsel. *Id.*

Second, Anderson argues her "treating cardiologist expressly warned" her that sitting for an in-person deposition "posed a significant health risk." (Pl.'s Opp'n to Defs.' Mot. for Sanctions at 7.) Specifically, she claims her doctor told her that "stress, exertion, and prolonged in-person proceedings present[] a significant, medically substantiated" risk of "cardiac" attack or "stroke." (*Id.* at 15.) But Anderson fails to support these claims with any "meaningful evidence." 7 James Wm. Moore et al., *Moore's Federal Practice* § 37.50[1][c], LEXIS (database updated 2025). The only medical evidence or documentation Anderson submitted to the Court regarding her heart condition is a doctor's note attached to one of her motions for a remote deposition stating she has atrial fibrillation. But again, the note failed to explain why atrial fibrillation, a common medical condition, prevented Anderson from sitting for an in-person deposition.

B

The Court must next consider whether an award of expenses would be unjust. In doing so, the Court considers the equities of the situation, including the "degree of the sanction in light of the severity of the transgression." *Tracinda Corp. v.*

6

*DaimlerChrysler AG*, 502 F.3d 212, 241 (3d Cir. 2007).  A plaintiff's *pro se* status does not prevent a court from imposing monetary sanctions.  *Painadath*, 348 F.R.D. at 34.

To begin, Anderson fails to offer any argument as to why an award of expenses would be unjust.  As the disobedient party, she bears the burden of persuasion.  Fed. R. Civ. P. 37 advisory committee's note to 1970 amendments.  She obviously fails to carry that burden.

In any event, an award of expenses is proportionate to Anderson's transgression. The Court ordered Anderson to be deposed in person, warning her that a failure to comply could result in sanctions.  (Order, Oct. 29, 2025 at 1.)  She then filed a baseless motion seeking relief the Court had already denied during the October 29 telephone conference.  She then tried again in the pre-dawn hours of her deposition date.  And though the Court denied this motion shortly after it was docketed, Anderson failed to show.  In short, Anderson willfully disobeyed a court order for no good reason and with full knowledge of the consequences.  She thumbed her nose at the Court and wasted the defendants' time and money, causing them to pay for a court reporter and file this motion for sanctions.  Finding an award of expenses to be unjust in this situation would contravene two of the principal purposes of a Rule 37 monetary sanction: Redressing "economic harms caused by violations of discovery orders" and preserving the Court's authority to oversee the orderly "administration of justice."  7 James Wm. Moore et al., *Moore's Federal Practice* § 37.50[1][a], LEXIS (database updated 2025).

C

Because Anderson was not justified in failing to comply with the Court's Order, and because an award of expenses would not be unjust, the Court now calculates "the

reasonable expenses, including attorney's fees, caused by [her] failure." Fed. R. Civ. P. 37(b)(2)(C).  In total, the defendants seek $10,141.00, a figure that comes from three general categories of expenses: (1) the court reporter fee for Anderson's November 7 deposition ($390), (2) attorney's fees associated with the filing of this motion for sanctions ($4,926) and (3) the attorney's fees associated with preparation for Anderson's November 7 deposition and other related matters ($4,825).  The Court will not consider the third category of expenses because Anderson was eventually deposed, and the Court does not know how much, if any, additional time defense counsel spent preparing for the second deposition.

1

The defendants first seek to recover the non-refundable fee for the court reporter scheduled to be present at Anderson's November 7 deposition—$390.  (Exhibit 1 at 2, Dkt. No. 92-1.)  This expense is clearly reasonable and caused by Anderson's failure to appear for her deposition.  *See* Fed. R. Civ. P. 37(b)(2)(C).

2

The defendants next request attorney's fees in connection with filing this motion. Attorney's fees associated with a motion for sanctions qualify as expenses caused by a disobedient party's failure to comply with a court order.  Fed. R. Civ. P. 37(b)(2)(C); *see Cerco Bridge Loans 6 LLC v. Schenker*, 768 F. Supp. 3d 559, 583 (S.D.N.Y. 2025) (explaining that reasonable fees may include attorney's fees and costs in connection with filing a motion for sanctions); *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 729 F.2d 469, 475 (7th Cir. 1984) (endorsing the view that Rule 37(b) monetary sanctions include all expenses that would not have been sustained had the disobedient party conducted

8

herself properly).  To test whether attorney's fees are reasonable under Rule

37(b)(2)(C), courts use the "lodestar" method—that is, the product of the reasonable

hours spent on the matter and a reasonable hourly rate.  *Doering v. Union Cnty. Bd. of*

*Chosen Freeholders*, 857 F.2d 191, 195 (3d Cir. 1988); *see also Doe v. Mast*, No. 22-cv-

00049, 2025 WL 1787436, at *2 (W.D. Va. June 27, 2025).  The party moving for

attorney's fees bears the burden to show that her rates and hours are reasonable by

submitting "evidence supporting the hours worked and rates claimed."  *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983).

Two attorneys for the defendants—Dominic Borelli and Monica Littman—

worked on the briefs in support of their motion.  Their billing rates were $235 and $275

per hour, respectively.  Borelli and Littman submitted certifications outlining their

qualifications, years of experience and time spent on the matter.  (Dominic Borelli Decl.

at 1–5, Dkt. No. 106); (Monica Littman Decl. at 1–6, Dkt. No. 107.)  They also

submitted average prevailing rates in the market.  Borelli is a 2023 graduate of

Widener University, Delaware School of Law and an associate in Kaufman Dolowich's

Financial Services & Institutions Practice Group.  (Dominic Borelli Decl. ¶¶ 5–6.)

Littman is a 2004 graduate of Villanova University School of Law and the Co-Vice

Chair of Kaufman Dolowich's Financial Services & Institutions Practices Group.

(Monica Littman Decl. ¶¶ 7–8.)

Borelli's and Littman's hourly rates ($235 and $275, respectively) are lower than

the average rates charged by other attorneys with comparable experience ($265–315

and $630–$715, respectively) according to the schedule set by the Community Legal

Services, Inc.  *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001) (recognizing

that the fee schedule established by the Community Legal Services, Inc. is a fair reflection of the prevailing market rates in Philadelphia).  Borelli's $235 and Littman's $275-per-hour rates are reasonable.

Borelli billed 11.6 hours in connection with this motion; Littman billed 8.  They both provided a line-by-line itemization describing the tasks performed and hours billed.  *See* (Exhibit 8 at 2–3, Dkt. No. 85-8); (Exhibit 2 at 2, Dkt. No. 92-2).  After scrutinizing every line item, the Court concludes that the 19.6 hours billed are reasonable.  Multiplying the $235 hourly rate by the 11.6 hours expended yields $2,726; multiplying the $275 hourly rate by the 8 hours expended equals $2,200.  These fees, combined with the court reporter's bill, result in a total sanction of $5,316.00.

An appropriate Order follows.

BY THE COURT:


*/s/ Gerald J. Pappert*

Gerald J. Pappert, J.